IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANDRE RHYNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:05cv0524-VPM |
| | ) [WO] |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Andre Rhynes ["Rhynes"] filed this action seeking review of a final decision of the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) (2000). Upon review of the record and the briefs submitted by the parties, the court finds that the Commissioner's decision should be reversed and remanded.

**I.   FACTS AND PROCEDURAL HISTORY**

On 11 July 2003, Rhynes filed applications for disability insurance benefits and supplemental security income in which Rhynes claimed to have become unable to work as of 10 February 2003 due to the effects of Hepatitis C (R. 48-50; 64; 252-57).

Rhynes, who is currently 45 years old, completed school through the seventh grade (R. 68). His past relevant work includes employment as a ice cream "machine operator" and a "machine operator" in a "rubber plant" (R. 65). He also worked as a "machine operator" for an agency that places temporary employees. *Id*.

His applications were denied initially (R. 27-28), and an evidentiary hearing before administrative law judge ["ALJ"] James D. Smith resulted in an unfavorable decision (R. 9-24). The Social Security Administration's ["SSA"] Appeals Council denied Rhynes's request for review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner (R. 4-6). Rhynes then filed this timely lawsuit (Doc. # 1).

## II.  STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." **Miles v. Chater**, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing **Bloodsworth v. Heckler**, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," **Kelley v. Apfel**, 185 F.3d 1211 (11th Cir. 1999) (citing **Graham v. Apfel**, 129 F.3d 1420, 1422 (11th Cir. 1997)).[1] This is true despite the existence of substantial evidence "contrary to the findings of the ALJ." **Barron v. Sullivan**, 924 F.2d 227, 230 (11th Cir. 1991). "There is no presumption, however, that the Commissioner

---

[1] In **Graham v. Apfel**, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See* **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles*, 84 F.3d at 1400 (citations omitted).

### III.   DISCUSSION

*A.   Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove that he is disabled, which means that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2000); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a) (2000).

The regulations governing disability determinations provide a five-step sequential evaluation process that the ALJ must follow to determine whether a claimant has proven that he is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also* **Ambers v. Heckler**, 736 F.2d 1467, 1469 (11th Cir. 1984); **Williams v. Barnhart**, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002).  If the claimant is not currently engaged in substantial gainful activity, the ALJ must determine whether he suffers from a severe impairment that has lasted or is expected to last 12 months or more.  §§ 404.1509, 416.909, 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).  If so, and the impairment(s) is of such severity as to meet or medically equal a condition described in the SSA's "Listing of Impairments," then the claimant will be found to be

disabled.  §§ 404.1520(a)(4)(iii); 404, subpt. P, app. 1; 416.920(a)(4)(iii).

If the claimant's severe impairment(s) does not automatically qualify him for disability benefits, the ALJ must then assess his residual functional capacity ["RFC"], which represents "the most [a claimant] can still do despite [his] limitations."  §§ 404.1545(a), 416.945(a).  Considering his RFC, the ALJ must determine whether the claimant is able to perform the physical and mental demands of his past relevant work.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If not, the ALJ must determine whether, considering his RFC, age, education, and past work experience, the claimant is capable of performing other jobs available in significant numbers in the national economy.  §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c).

### B.   *Application of the Standard: The ALJ's Findings*

After discussing the legal standards and evidence in the record, the ALJ found, *inter alia*, that Rhynes "possesses the residual functional capacity to perform a light range of unskilled work activity" with certain limitations that do not preclude him from returning to his past relevant work "as [Rhynes] described it . . . and as it is performed in the national economy" (R. 23).[2]  Based on information in the record, Rhynes's testimony at the hearing, and information in the ***Dictionary of Occupational Titles*** ["D.O.T."], the ALJ found that Rhynes's previous employment is most accurately classified as "an assembly-press operator"

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b); 416.967(b).

4

with the D.O.T. index number 690.685-014 (R. 16, 22).

### C.     *Rhynes's Arguments*

Rhynes does not challenge the ALJ's conclusions regarding his RFC and in fact challenges only the ALJ's conclusions regarding his past relevant work and the classification thereof. Although Rhynes offers several reasons for reversing and remanding the Commissioner's decision, many of which lack merit,[3] the court need only address his

---

[3]For example, more than once, Rhynes contends that the ALJ "never mentioned" information provided by a state disability specialist on a "Vocational Rational [sic] Form," exhibit 8E in the administrative record (R. 98; Doc. # 11-1, p. 4; Doc. # 16, pp. 2-3). Thus, he contends, the ALJ failed to perform his duty to "make clear the weight accorded to each item of evidence" (Doc. # 11.1, p. 4).

Notwithstanding Rhynes's explicit, unambiguous, and forceful assertions to the contrary, the ALJ not only cited to and discussed this information, but he also stated specifically that he did not agree with the state agency's conclusion regarding the proper classification of Rhynes's employment based on Rhynes's "description of his work activities . . . coupled with information found in the" D.O.T. (R. 16).

The court is troubled by the degree to which Rhynes, through his legal counsel, Georgia Ludlum, Esq. ["Ludlum"], appears to have misrepresented the record by accusing the ALJ of completely ignoring evidence when he clearly did not. It is one thing for a party or attorney to draw arguable or even questionable conclusions from accurately stated facts. It is quite another to premise an otherwise reasonable conclusion on erroneously stated facts (e.g., the ALJ's failure to consider material evidence in the record warrants remand). While the court does not now suggest that Rhynes or his attorney intended to deceive the court, the absence of ill intentions is hardly redemptive, and the obviousness of the error lends itself strongly to a conclusion that Rhynes's attorney was aware of the inaccuracy.

This is not the first time this court has admonished Ludlum for misstating facts. *See* **Tharpe v. Barnhart**, Civil Action No. 2:04cv1048-VPM, Document # 17, at 13 n.8 (M.D. Ala. Oct. 18, 2005). There is at least one additional instance of apparent carelessness on which the court did not

contention that the ALJ's classification of his past previous employment is not supported by substantial evidence. It is not.

### D.     *Rhynes's Job Classification*

The evidence before the ALJ regarding Rhynes's past relevant work included the following:

1.  Responses to questions listed on an adult "Disability Report," form SSA-3368 (R. 65-66);

2.  Responses to questions listed on a "Work History Report," form SSA-3369-F6 (R. 76-84);

3.  A "Vocational Rationale Form" completed by a state agency disability specialist (R. 98-103); and

4.  Rhynes's testimony at his administrative hearing (R. 269).

While the information on the written forms provides some insight into the strength and

---

comment other than to bring it to Ludlum's attention. *See **Streeter v. Barnhart***, Civil Action No. 2:04cv1183-VPM, Document # 17, at 10 n.4 (M.D. Ala. Nov. 14, 2005).

Again, the court admonishes Ludlum not to allow her passion for, or convictions regarding, her clients' cause to compromise her overriding duty, grounded in respect for the profession and the judiciary and codified in Alabama's rules of professional conduct, to proceed before this court with candor and integrity. Ala. Rules of Prof'l Conduct R. 3.3. With a sincere hope that the court will never again be compelled to address this issue, Ludlum is advised that the instant caution reflects the limits of the court's tolerance. Similar misrepresentations in future pleadings   - whether intended or not -    will invite sanctions as well as any additional measures the court deems necessary to ensure compliance with the directives of this court and the rules governing the legal profession.

mobility requirements of Rhynes's work as a "machine operator,"[4] Rhynes's responses to the questions that would allow him to expound upon the details of his daily responsibilities provide virtually no insight into what he actually did.  As an example, when asked on the disability report, "What did you do all day? (If you need more space, write in the "Remarks" section.):", Rhynes stated, "operated a machine all day" (R. 60).   Similarly, on the work history report, Rhynes identified his previous job as a "machine operator" in a "warehouse", and, in describing his daily duties, stated that he  "operated a press machine making car parts" (R. 77).

Apparently based on this information, and without explanation, the state disability agency classified his previous employment as "press operator" with a D.O.T. index number of 617.260-010.  According to the D.O.T., the referenced "press operator" position is classified as "heavy duty" and is found in "[a]ny [i]ndustry." ***D.O.T.***, 617.260-010, *available at* www.westlaw.com (search citation "DICOT 617.260-010").

At Rhynes's administrative hearing, the ALJ briefly questioned him regarding his past work:

---

[4]The evidence was inconsistent in this regard.  On his disability report, Rhynes stated that he walked for four hours; stood for four hours; handled, grabbed or grasped big objects for four hours; and reached for four hours (R. 66).  He stated that he did not sit, climb, stoop, kneel, crouch, crawl, write, type, or handle small objects. *Id.* Regarding lifting requirements, Rhynes stated that he lifted no more than 20 pounds, but lifted 20 pounds frequently, a pattern which the Commissioner would classify as medium work. *Id.*; 20 C.F.R. §§ 404.1567(c); 416.967(c).

On his work history report, however, Rhynes stated that he walked and stood for eight hours, and knelt, crouched and stooped frequently (R. 77).  Rhynes also did not indicate any lifting requirements.

| | |
|---|---|
| Q | All right.  When did you last work? |
| A | It's been - - I don't - - it's been over a year.  I don't exactly know - - |
| Q | What type of work were you doing? |
| A | What type of work I was doing? |
| Q | Yeah.  When you were working? |
| A | I was a machine operator. |
| Q | Where at? |
| A | At Gates, Gates Rubber Company. |
| Q | Jayce (Phonetic)? |
| A | Gates Rubber Company. |
| Q | All right.  What type of machine operator were you? |
| A | Making like, like car pulleys that goes on cars. |
| Q | Uh-huh.  How long were you with them? |
| A | Five years. |
| Q | What happened to that job? |
| A | They closed down and moved to Kansas. |

(R. 269).

Based on this information and the information provided in the disability and work history reports, the ALJ disagreed with the state agency's job classification.[5]  The ALJ decided instead that Rhynes's job was more accurately classified as an "'Assembly-Press Operator,' which is defined in Section 690.685-014 of the D.O.T." and which is considered a occupation of a general nature to be found in "any industry" (R. 16).

---

[5]This decision is supported by substantial evidence in the record.  The D.O.T. describes the "press operator" position identified by the state agency as "[h]eavy work" requiring a worker to "exert[] 50 to 100 pounds of force frequently."  *D.O.T.*, 617.260-010.  Yet, Rhynes indicated on his disability report that his machine operator work frequently required him to lift, at most, 20 pounds (R. 66).  In addition, the job identified by the state agency requires "plan[ning]" and "knowledge of physical properties of metal."  *D.O.T.*, 617.260-010.  Rhynes, who has only a seventh grade education, stated that his previous work did not require any technical knowledge or skills (R. 66, 77).  These disparities are sufficient to give a fact finder doubt regarding the accuracy of the state agency's determination.  Therefore the ALJ was free not to accord the agency's relevant conclusions any weight.

> Section 690.685-014 of the D.O.T. describes the claimant's past work as a light, unskilled job that involves tending a hand or power press that shapes or assembles metal, plastic, rubber or glass parts by crimping, shaping, locking, staking or press fitting. According to the D.O.T., the job of "Assembly-Press Operator" involves performing repetitive, or short-cycle work, and does not require climbing, balancing, stooping, kneeling, crouching, crawling and being exposed to extreme cold and extreme heat. The Administrative Law Judge has also looked to the claimant's description of his past work. In his own account, the claimant indicated that his primary duty was operating a machine, and that he did not have to lift more than 20 pounds during the performance of his previous job. The totality of the objective clinical findings of record do not establish the presence of any physical or mental limitations on the claimant's behalf in his ability to perform his past relevant work. As such, the claimant's past relevant work does not involve the exertional or nonexertional requirements in excess of his residual functional capacity.

(R. 22).

As noted *supra*, if the Commissioner determines that a claimant can return to his past relevant work, the evaluation ends, and the claimant is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's past relevant work "is work [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." §§ 404.1560(b)(1); 416.960(b)(1). Although the claimant is the primary source of information regarding past employment, the Commissioner

> may also ask other people who know about [his] work. [The Commmissioner] may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes

and supplements, published by the Department of Labor, to obtain evidence [she] need[s] to help [her] determine whether [a claimant] can do [his] past relevant work, given [the claimant's] residual functional capacity.

§§ 404.1560(b)(2); 416.960(b)(2).

The plaintiff must demonstrate that he is unable to return to past work both as he performed it and as it is generally performed in the national economy. *See* **Schnorr v. Bowen**, 816 F.2d 578, 581 (11th Cir. 1987) (noting the plaintiff's burden); Titles II and XVI: Past Relevant Work - - The Particular Job or the Occupation as Generally Performed, Soc. Sec. Rul. 82-61 (1982). In the Eleventh Circuit, the latter standard is met if the claimant cannot return to the "kind" of work previously performed, as opposed to the specific job he held, though the Court of Appeals's understanding of "kind" is not clear. **Jackson v. Bowen**, 801 F.2d 1291, 1293-94 (11th Cir. 1986).

The evidence in the record must provide sufficient details regarding the nature of the claimant's past relevant work. As the Commissioner has explained:

> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a *description of tasks and responsibilities* will permit a judgment as to the skill level and the current relevance of the individual's work experience.

Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work, in General, Soc. Sec Rul. 82-62 (1982) (emphasis added); *Schnorr*, 816 F.2d at 581 ("Although a claimant bears the burden of demonstrating an inability to return to his past relevant work, the Secretary has an obligation to develop a full and fair record."); *see also*, *e.g.*, *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (noting "that the record does not contain a detailed description of the duties and responsibilities of [the claimant's] past relevant work as a teacher's aide and hotel maid" and requiring "the ALJ [to] consider all the duties of that work and evaluate her ability to perform them in spite of her impairments); *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988) (reversing the Commissioner's decision when the ALJ failed to inquire into the details of the claimant's past job as it related to his particular limitations).

Seizing upon the Court of Appeals's potentially broad view of "past relevant work," as alluded to in *Jackson,* the Commissioner contends that the ALJ's chosen classification is appropriate because it reflects the type of work Rhynes performed.  The Commissioner ultimately may be correct, but the record does not include sufficient information for this court to affirm her conclusion or to conclude that the work performed by Rhynes is more appropriately classified as a "molding-press operator."   That classification, for example, is indexed as 556.685-066 in the D.O.T., is limited to the "rubber industry," and involves medium, as opposed to light, work around "heated presses." D.O.T. 556.685-066, *available*

*at* www.westlaw.com (search citation "DICOT 556.685-066").[6]

The ALJ's opinion implies that he settled on assembly-press operator because of the various characteristics of the job as described in the D.O.T., such as "tending a hand or power press that shapes or assembles metal, plastic, rubber or glass parts by crimping, shaping, locking, staking or press fitting" and "performing repetitive, or short-cycle work,

---

[6]The court is not convinced that the standard set forth in *Jackson* permits the ALJ to select one or the other simply because the information in the record is vague enough to render either choice reasonable.

Unfortunately, *Jackson* offers little guidance to courts attempting to determine just how broadly to view a claimant's "occupation," but the ruling strongly suggests that Rhynes must demonstrate that he is unable not only to return to the press operator's position at the Gates manufacturing company making the pulleys utilized in car engines. He must also demonstrate that he is unable to perform any job for which his previous job directly qualifies him, although that job may be in a different setting. 801 F.2d at 1294. As the Court of Appeals stated, the claimant's inability to return to his "past job as a link belt operator at the *pipe manufacturing factory*" is not indicative, necessarily, of his inability to perform "such jobs *in general*." *Id.* (emphasis added).

Determining the "kind" of work a claimant performed may be a simple matter in situations where the classification options in the D.O.T. (or other acceptable vocational literature) are limited and, though differing in their descriptions from the information provided by the claimant, are nonetheless sufficiently similar to justify viewing them cumulatively as functionally *defining* an occupation in general. *See* **Foxx v. Apfel**, No. Civ. A. 98-0787-P-L, 2000 WL 1137221, at *7 (S.D. Ala. July 19, 2000). In *Foxx*, for example, the claimant contended that the ALJ erred because the D.O.T.'s description of the job of "chemical operator," which defined the job as medium level work, differed rather dramatically from the specific requirements of the claimant's former job, which the Commissioner would have defined as heavy work. *Id.* Notwithstanding the distinctions, the district court determined that the ALJ's classification was not erroneous when the D.O.T. "lists two job descriptions for 'chemical operator,' and both are categorized as requiring medium level strength." *Id.*

In this case, however, a "press machine operator" is a far too ambiguous category, conceivably spanning numerous industries and involving material, functional distinctions, for it to be considered an occupation in and of itself. As the D.O.T. states, "[c]lassifications" of a press operator's job "[are] made according to function [sic] of machine [sic]." Term Titles and Definitions, **D.O.T.**, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTTERM.HTM.

[that] does not require climbing, balancing, stooping, kneeling, crouching, crawling and being exposed to extreme cold and extreme heat" (R. 22).  Yet, the information Rhynes provided did not touch on most of these aspects of his prior job.  Indeed, with respect to those functions to which the evidence does relate, such as kneeling, crouching, and stooping, Rhynes's description conflicts with the ALJ's job classification and his rationale for choosing it.  The lifting requirements of the ALJ's job classification also conflict with those Rhynes described.  *See infra* note 4.

To select one arguably reasonable alternative among other arguably reasonable alternatives without justifying the choice   - especially when it does not reflect and to some extent contradicts the evidence in the record -   is the essence of arbitrariness.  For this reason, the Commissioner's decision must be reversed and remanded to more fully develop the record regarding the details of Rhynes's past relevant work.

## IV.   CONCLUSION

Therefore it is hereby,

ORDERED that the final decision of the Commissioner is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for additional proceedings to more fully develop the record regarding Rhynes's past relevant work and, based on the additional information, to resume the evaluation of Rhynes's disability claim.

DONE this 10th day of May, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE